1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   NANTIDA YIENGYOUAV,                        Case No.  1:23-cv-01601-HBK

12                  Plaintiff,                   ORDER REMANDING CASE TO
                                                 COMMISSIONER OF SOCIAL SECURITY[2]
13          v.
                                                 (Doc. Nos.  14, 16)
14   MICHELLE KING,
     COMMISSIONER OF SOCIAL
15   SECURITY,[1]

16                  Defendant.

17

18

19          Nantida Yiengyouav ("Plaintiff") seeks judicial review of a final decision of the

20   Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

21   disability insurance benefits under the Social Security Act.  (Doc. No. 1).  The matter is currently

22   before the Court on the parties' briefs, which were submitted without oral argument.  (Doc. Nos.

23   14, 16).  For the reasons stated, the Court orders this matter remanded for further administrative

24   proceedings.

25   _____

26   [1] The Court has substituted Michelle King, who has been appointed the Acting Commissioner of Social
     Security, as the defendant in this suit.  *See* Fed. R. Civ. P. 25(d).
27   [2] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C.
     §636(c)(1).  (Doc. No. 6).
28

# I.    JURISDICTION

Plaintiff protectively filed for disability insurance benefits on July 6, 2019, alleging an onset date of May 4, 2016.  (AR 340-46).  Benefits were denied initially (AR 59-80, 99-103), and upon reconsideration (AR 81-98, 107-13).  Plaintiff appeared at a hearing before an Administrative Law Judge ("ALJ") on May 5, 2022.  (AR 39-58).  Plaintiff was represented by counsel and testified at the hearing with an interpreter.  (*Id*.).  On May 23, 2022, the ALJ issued an unfavorable decision (AR 16-38), and May 17, 2023 the Appeals Council denied review (AR 1-6).  The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

# II.    BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 52 years old at the time of the hearing.  (*See* AR 369).  She completed tenth grade.  (AR 44).  She lives with her husband and two children.  (AR 43-44).  Plaintiff has work history as a machine operator.  (AR 44-46, 53).  Plaintiff testified that she is unable to work because of hearing loss and memory problems.  (AR 46).  She "never [does] anything independently," she no longer drives because she gets anxious, and she has back, neck, and chest pain.  (AR 47-50).  She can lift one pound maximum, has difficulty being around large groups of people, is unable to follow the plot of a television show, and cannot get out of bed because of depression almost every day.  (AR 49-51).

# III.    STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.    FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of

1    impairments which significantly limits [his or her] physical or mental ability to do basic work

2    activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's

3    impairment does not satisfy this severity threshold, however, the Commissioner must find that the

4    claimant is not disabled.  20 C.F.R. § 404.1520(c).

5         At step three, the Commissioner compares the claimant's impairment to severe

6    impairments recognized by the Commissioner to be so severe as to preclude a person from

7    engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as

8    severe or more severe than one of the enumerated impairments, the Commissioner must find the

9    claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

10        If the severity of the claimant's impairment does not meet or exceed the severity of the

11   enumerated impairments, the Commissioner must pause to assess the claimant's "residual

12   functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's

13   ability to perform physical and mental work activities on a sustained basis despite his or her

14   limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the

15   analysis.

16        At step four, the Commissioner considers whether, in view of the claimant's RFC, the

17   claimant is capable of performing work that he or she has performed in the past (past relevant

18   work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant

19   work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If

20   the claimant is incapable of performing such work, the analysis proceeds to step five.

21        At step five, the Commissioner considers whether, in view of the claimant's RFC, the

22   claimant is capable of performing other work in the national economy.  20 C.F.R. §

23   404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider

24   vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §

25   404.1520(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must

26   find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable

27   of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is

28   therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

1    The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*,

2    180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the

3    Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

4    work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2);

5    *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

6                            **V.    ALJ'S FINDINGS**

7    At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity

8    during the period from her alleged onset date of May 4, 2016 through her date last insured of

9    December 31, 2021. (AR 21). At step two, the ALJ found that, through the date last insured,

10   Plaintiff had the following severe impairments: hearing loss, degenerative disc disease of the

11   lumbar spine, asthma, chronic obstructive pulmonary disorder, anxiety, depression and

12   posttraumatic stress disorder. (AR 21). At step three, the ALJ found that, through the date last

13   insured, Plaintiff did not have an impairment or combination of impairments that met or

14   medically equaled the severity of a listed impairment. (AR 22). The ALJ then found that,

15   through the date last insured, Plaintiff had the RFC to

16          perform light work as defined in 20 CFR 404.1567(b). The claimant
            can lift and carry 20 pounds occasionally and 10 pounds frequently,
17          stand and/or walk for 6 hours in an 8-hour workday, and sit for 6
            hours in an 8-hour workday. The claimant can occasionally climb
18          ramps, stairs, ladders, ropes and scaffolds, and can occasionally
            balance, crawl, crouch, kneel and stoop. She should not work in
19          environments subjecting her to more than moderate levels of
            background noise, and any learning on the job will be required to
20          occur through demonstration. The claimant should not work in
            environments subjecting her to concentrated exposure to extreme
21          cold temperatures, dampness or respiratory irritants such as gases,
            dust, smoke and/or fumes. The claimant is capable of performing
22          jobs of a non-complex nature requiring the performance of no more
            than simple, routine tasks. The claimant should have no contact with
23          members of the general public.

24   (AR 23). At step four, the ALJ found that, through the date last insured, Plaintiff is unable to

25   perform any past relevant work. (AR 28). At step five, the ALJ found that, through the date last

26   insured, considering Plaintiff's age, education, work experience, and RFC, there were jobs that

27   existed in significant numbers in the national economy that Plaintiff can perform, including:

28   marker and photocopy machine operator. (AR 29). On that basis, the ALJ concluded that

1    Plaintiff has not been under a disability, as defined in the Social Security Act, at any time from

2    May 6, 2016, the alleged onset date, through December 31, 2021, the date last insured.  (AR 30).

3                                    **VI.    ISSUES**

4           Plaintiff seeks judicial review of the Commissioner's final decision denying her disability

5    insurance benefits under Title II of the Social Security Act.  (Doc. No. 1).  Plaintiff raises the

6    following issues for this Court's review:

7           1.   Whether the ALJ properly considered Plaintiff's symptom claims; and

8           2.   Whether the RFC was supported by substantial evidence in light of the ALJ's

9                consideration of the medical opinion of Angela Desai, NP.

10   (Doc. No. 14 at 3-15).

11                                   **VII.    DISCUSSION**

12   **A.  Symptom Claims**

13          An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding

14   subjective pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

15   The ALJ first must determine whether there is "objective medical evidence of an underlying

16   impairment which could reasonably be expected to produce the pain or other symptoms alleged."

17   *Id*. (internal quotation marks omitted).  "The claimant is not required to show that his impairment

18   could reasonably be expected to cause the severity of the symptom he has alleged; he need only

19   show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572

20   F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

21          Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the

22   ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ]

23   gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d

24   1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are

25   insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

26   undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

27   1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a

28   credibility determination with findings sufficiently specific to permit the court to conclude that

the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 24). Plaintiff argues the ALJ failed to provide clear and convincing reasons for rejecting "psychological symptomology evidence." (Doc. No. 14 at 12-14). More specifically, Plaintiff argues the ALJ's "mere 'summary' of the medical evidence absent any dismission of this evidence in relation to specific testimony or symptomology evidence, renders the ALJ's amorphous rejection of Plaintiff's testimony unreviewable." (*Id*. at 14). The Court agrees.

It is well-settled in the Ninth Circuit that ALJs are not required "to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020); *Smartt v. Kijakazi*, 53 F. 4th 489, 499 (9th Cir. 2022) ("The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince.")). However, "[a]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *Brown-Hunter*, 806 F.3d at 494 ("To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by the evidence in the record, to support that credibility determination.").

Here, a plain reading of the ALJ's decision indicates that while he identified Plaintiff's mental health claims of depression, anxiety, and difficulty being in crowds, the analysis is entirely comprised of a chronological summary of the medical and opinion evidence including diagnoses in May 2016 of major depressive disorder, recurrent, moderate and moderately-severe anxious distress, and contemporary mental health status examination findings of good eye contact, full orientation, normal gait, normal speech, blunted affect, and depressed mood; evaluation for a temporary involuntary psychiatric hold in December 2016, at which time she demonstrated intact memory, fair insight and judgment, coherent speech, and anxious mood and affect; positive screening for positive suicidal ideation without plans or intent in June 2019; and a general notation that Plaintiff attended therapy regularly throughout 2018 and 2019 and it was "noted she was doing good with her medications without any side effects" with mild depression screenings "throughout 2020.[3]  (AR 27-28, 517, 540-42, 558, 562, 613 (reporting she is "good" on current meds but also reporting panic when going out sometimes and passive suicidal ideation), 619, 813-14).

Defendant generally responds, without specific citation to the medical record, that the ALJ "discussed evidence of Plaintiff's physical and mental functioning that tended to undermine [her] claims."  (Doc. No. 16 at 2).  Moreover, and primarily, Defendant argues that the ALJ "pointed to numerous medical opinions and findings that undermined Plaintiff's reports about the extent of her limitations."  (*Id*. at 2-3 (citing *Carmickle v. Comm'r of Soc. Sec.,* 533 F.3d 1155, 1161 (9th Cir. 2008)); *see also Edna v. Saul*, 2020 WL 1853312, at *8 (S.D. Cal. Apr. 13, 2020) (lack of medical opinion finding Plaintiff disabled was a clear and convincing reason to reject Plaintiff's subjective allegations).  However, the Court's review of the record indicates that the ALJ considered the persuasiveness of the medical opinion evidence only as required under 20 C.F.R. § 404.1520c(a) and (b).  Thus, the Court is not permitted to consider this reasoning as it was not offered by the ALJ in the decision as a reason to discount Plaintiff's symptom claims.  *Bray v.*

---

[3] The ALJ also considered Plaintiff's alleged physical impairments of hearing loss, back pain, and asthma. (AR 24-26).  However, as Plaintiff does not specifically challenge those findings in her opening brief the Court declines to consider them here.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

*Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009) (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

Based on the foregoing, to the extent that the ALJ found Plaintiff's mental health symptom claims were not supported by the objective medical evidence, without explanation as to how the medical evidence undermined her testimony, this was not a clear and convincing reason, supported by substantial evidence, to discount her mental health symptom claims. On remand, the ALJ must reconsider Plaintiff's symptom claims.

**B. RFC/Medical Opinions**

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(a). The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. (*Id.*) (RFC determination will be affirmed if supported by substantial evidence). However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Ultimately, a claimant's RFC is a matter for the ALJ to determine. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ ... to determine residual functional capacity.").

Plaintiff argues the ALJ erred in assessing the RFC because he failed to account for mental limitations assessed by her treating nurse practitioner Angela Desai. (Doc. No. 14 at 4-12). For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. § 404.1520c(a). Instead, an ALJ must

1 consider and evaluate the persuasiveness of all medical opinions or prior administrative medical

2 findings from medical sources.  20 C.F.R. § 404.1520c(a) and (b).  The factors for evaluating the

3 persuasiveness of medical opinions and prior administrative medical findings include

4 supportability, consistency, relationship with the claimant (including length of the treatment,

5 frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of

6 an examination), specialization, and "other factors that tend to support or contradict a medical

7 opinion or prior administrative medical finding" (including, but not limited to, "evidence showing

8 a medical source has familiarity with the other evidence in the claim or an understanding of our

9 disability program's policies and evidentiary requirements").  20 C.F.R. § 404.1520c(c)(1)-(5).

10      Supportability and consistency are the most important factors, and therefore the ALJ is

11 required to explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2).

12 Supportability and consistency are explained in the regulations:

13      (1) Supportability. The more relevant the objective medical evidence and
        supporting explanations presented by a medical source are to support his or
14      her medical opinion(s) or prior administrative medical finding(s), the more
        persuasive the medical opinions or prior administrative medical finding(s)
15      will be.

16      (2) Consistency. The more consistent a medical opinion(s) or prior
        administrative medical finding(s) is with the evidence from other medical
17      sources and nonmedical sources in the claim, the more persuasive the
        medical opinion(s) or prior administrative medical finding(s) will be.
18

19 20 C.F.R. § 404.1520c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other

20 factors were considered.  20 C.F.R. § 404.1520c(b)(2).  However, when two or more medical

21 opinions or prior administrative findings "about the same issue are both equally well-supported ...

22 and consistent with the record ... but are not exactly the same," the ALJ is required to explain how

23 "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20

24 C.F.R. § 404.1520c(b)(3).

25      The Ninth Circuit has additionally held that the new regulatory framework displaces the

26 longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and

27 convincing" reasons for rejecting a treating or examining doctor's opinion.  *Woods v. Kijakazi*, 32

28 F.4th 785 (9th Cir. 2022).  Nonetheless, in rejecting an examining or treating doctor's opinion as

1    unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial

2    evidence. *Id*. at 792.  This means that the ALJ "must 'articulate ... how persuasive' [he or she]

3    finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or

4    she] considered the supportability and consistency factors' in reaching these findings." *Id*. (citing

5    20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

6        In January 2020, Ms. Desai completed a "mental disorder questionnaire for evaluation of

7    ability to work," and opined that Plaintiff's posture, gait, mannerisms, or general appearance

8    impaired her ability to work; abnormalities in concentration, judgment, and social isolation would

9    impair her ability to work; her mood and affect would be "affected" to a degree that would impair

10   her ability to work; her social functioning is deficient to the point that it would impair her ability

11   to work with supervisors, co-workers, or the public; and her mental illness would impair her

12   ability to adapt to stresses common in the normal work environment.  (AR 853-54).  The ALJ

13   found the opinion "generally aligns with [state agency medical consultants] Dr. Leizer and Dr.

14   Sampson's findings, in that [Plaintiff's] impairments cause limitations socially and cognitively.

15   However, the degree of limitation is not supported by the medical evidence because her

16   medications were effective in lessening her symptoms of depression and anxiety and her

17   depression screenings were generally mild.  As such, I find the State agency opinions more

18   persuasive."  (AR 28).

19       Plaintiff argues the ALJ "harmfully erred by failing to properly distinguish, discuss, or

20   specify to any extent as to how the ALJ determined how [Ms. Desai's] own medical evidence

21   (supportability) and the record as a whole (consistency) support a finding that 'her medications

22   were effective in lessening her symptoms of depression and anxiety and her depression screenings

23   were generally mild' in order to properly reject [Ms. Desai's] disabling opinions including"

24   limitations on Plaintiff's social ability and her impaired ability to adapt to stress.  (Doc. No. 14 at

25   5).  Plaintiff also argues that substantial evidence does not support the ALJ's general findings,

26   without citation to the record, that medications were effective in lessening her mental health

27   symptoms or that her depression screenings were generally mild.  (Doc. No. 14 at 6-12, citing,

28   e.g., AR 548 (reporting meds are "too strong"; mental status examination ("MSE") findings of

sad mood; sullen, sad and flat affect; and impaired insight and judgment), 551 (reporting medication helps with sleep, but still moderate dysphoria and depression), 558-59 (reporting fleeting thoughts of suicidal ideation; MSE findings of sad mood and flat and tearful affect), 608 (MSE findings of sad and depressed mood; helpless/hopeless, suicidal, guilt, and worthless thought content; fair memory; and fair judgment and insight), 612 (Ms. Desai MSE findings of helpless/hopeless thought content; depressed, anxious and irritable mood, and flat affect), 613 (reporting feeling "panicky" and passive suicidal ideation, requesting increase in medication from Ms. Desai), 619-20 (reporting depression and panic when going out; Ms. Desai MSE findings of depressed and anxious mood), 621 (Ms. Desai MSE findings of helpless/hopeless and worthless thought content; depressed and anxious mood; flat and tearful affect), 623 (reporting "she would be better off dead sometimes" and Ms. Desai MSE findings of helpless/hopeless and worthless thought content and depressed and anxious mood), 625 (noting meds help with anxiety, and same MSE findings), 762 (treated for "unresolved anxiety and phobia"), 798 (noting a "6 year history of severe depression" and recommending a mental health assessment), 813 (reports feeling "fine" on current meds, but "always paranoid" when alone or near strangers).

Defendant does not offer any evidence from the record that would support the ALJ's finding regarding improvement with medication or mild depression screenings; rather, Defendant argues Plaintiff cannot demonstrate harmful error in the ALJ's analysis of Ms. Desai's opinion because the assessed RFC accounted for the assessed social limitations by limiting Plaintiff to "no contact with the general public," and the RFC reasonably accounted for assessed limitations regarding work stress because "the other part of her opinion suggest that any impairment with respect to stress was not 'significant' because it would not prevent Plaintiff from performing simple work on a full-time basis." (Doc. No. 16 at 6). As an initial matter, Defendant's argument that any errors in considering the opinion were harmless is unavailing because (1) the general argument as to "suggestions" in "other parts" of Ms. Desai's opinion regarding Plaintiff's ability to handle work stress is speculative, and (2) while the RFC accounts for limitations on Plaintiff's contact with members of the general public, the RFC does not include any restriction on contact with co-workers or supervisors as opined by Ms. Desai. *See Robbins v. Soc. Sec. Admin.*, 466

F.3d 880, 886 (9th Cir. 2006) ("an ALJ is not free to disregard properly supported limitations").

Moreover, when considering the medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Brown-Hunter*, 806 F.3d at 495 (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. In addition, as noted above, the Ninth Circuit recently clarified that under the new regulations for considering medical evidence, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate … how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (internal citations omitted).

The ALJ fails to explain how the specific limitations assessed by Ms. Desai "generally align" with, or are less persuasive than, the limitations opined by the state agency medical consultants, or how the "degree" of her assessed limitations are unsupported by the medical evidence, as discussed above. Thus, the ALJ's finding that the state agency opinions were "more persuasive" than Ms. Desai's opinion is not supported by substantial evidence. The ALJ must reconsider Ms. Desai's opinion, and reassess the RFC, on remand.

### C.  Additional Assignment of Error

Plaintiff also argues the ALJ failed to address the lay witness statements provided by Plaintiff's husband and niece. (Doc. No. 14 at 14-15). In light of the finding, discussed in detail *supra*, that the RFC needs to be reassessed due to improper consideration of the medical opinion evidence under the new regulations and improper evaluation of Plaintiff's symptom claims, the Court declines to address this challenge in detail here. On remand, the ALJ is instructed to

1 reconsider the medical opinion evidence and conduct a new sequential analysis, including a

2 reassessment of Plaintiff's symptom claims, and the step five findings if necessary.

3 **D. Remedy**

4 Plaintiff asks the Court to remand for an immediate award of benefits.  (Doc. No. 14 at

5 15).  The decision whether to remand for further proceedings or reverse and award benefits is

6 within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir.

7 1989).  An immediate award of benefits is appropriate where "no useful purpose would be served

8 by further administrative proceedings, or where the record has been thoroughly developed,"

9 *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the

10 delay caused by remand would be "unduly burdensome[.]"  *Terry v. Sullivan*, 903 F.2d 1273,

11 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse

12 its discretion not to remand for benefits when all of these conditions are met).  This policy is

13 based on the "need to expedite disability claims."  *Varney*, 859 F.2d at 1401.  But where there are

14 outstanding issues that must be resolved before a determination can be made, and it is not clear

15 from the record that the ALJ would be required to find a claimant disabled if all the evidence

16 were properly evaluated, remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96

17 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

18 The Court finds that further administrative proceedings are appropriate.  *See Treichler v.*

19 *Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not

20 appropriate when further administrative proceedings would serve a useful purpose).  Here, the

21 ALJ improperly considered Plaintiff's symptom claims and the medical opinion evidence, which

22 calls into question whether the assessed RFC, and resulting hypothetical propounded to the

23 vocational expert, are supported by substantial evidence.  "Where," as here, "there is conflicting

24 evidence, and not all essential factual issues have been resolved, a remand for an award of

25 benefits is inappropriate."  *Treichler*, 775 F.3d at 1101.  On remand, the ALJ should reevaluate

26 Plaintiff's symptom claims, as well as all relevant medical evidence, including medical opinions.

27 The ALJ should order additional consultative examinations and, if appropriate, take additional

28 testimony from medical experts.  The ALJ should conduct a new sequential analysis, reassess

Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 14) is GRANTED.

2. Defendant's Cross Motion for Summary Judgment (Doc. No. 16) is DENIED.

3. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the Commissioner's decision and REMANDS this case back to the Commissioner of Social Security for further proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion within thirty (30) days.

5. The Clerk shall enter judgment in favor of Plaintiff, terminate any motions and deadlines, and close this case.

Dated:    February 21, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE